## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| The Adelle Lincoln Alessandroni Revocable Trust, | |
| Plaintiff, | Case No. _____ |
| vs. | |
| Lance Lamberton | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT

COMES NOW The Adelle Lincoln Alessandroni Revocable Trust ("Plaintiff"), by and through the undersigned attorneys, and files this Complaint against Defendant Lance Lamberton, showing this Honorable Court as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff, The Adelle Lincoln Alessandroni Revocable Trust, is a spendthrift Trust currently managed by the acting Trustee, attorney Paul Greenan, of Stamford, Connecticut.  Trust assets are maintained at financial institutions based in Westlake, Texas and Boston, Massachusetts.

2. Defendant Lance Lamberton (hereafter, "Mr. Lamberton") is an individual residing at 3704 Tate Place, Austell, Georgia 30106.

3. During all relevant times, Mr. Lamberton has resided in Austell, Georgia.

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 on the basis of diversity jurisdiction because the amount in controversy exceeds the sum of $75,000.00 exclusive of interests and costs, and the action is between parties of different States.

5. Venue in this Court is proper under O.C.G.A. § 9-10-30 because the sole defendant against whom substantial relief is prayed resides in Cobb County in the State of Georgia.

## FACTUAL BACKGROUND

6. Adelle Lincoln Alessandroni ("Adelle") was employed in the New York City fashion industry. Adelle had one child, Mr. Lamberton, who was born from her first marriage.

7. In the 1970s, Adelle married her second husband, Venan Alessandroni, an estate planning attorney and partner with the New York City firm of Wormser, Kiely, Galef & Jacobs LLP.

8.     As the wife of an estate planning attorney, Adelle executed a large number of estate planning documents over the years.

9.     In those estate planning documents, Adelle repeatedly demonstrated her clear intention that Mr. Lamberton should never receive his inheritance outright.

10.     On May 27, 2011, Adelle executed The Adelle Lincoln Alessandroni Revocable Trust ("the Trust").  Adelle appointed herself as initial Trustee.

11.     Adelle executed a First Amendment to the Trust on September 6, 2012, and a Second and final Amendment on November 16, 2012.

12.     The Trust directs that, upon Adelle's death, all remaining assets shall be divided as follows: 40% in continuing trust for the benefit of Mr. Lamberton; 30% in continuing trust for the benefit of Adelle's grandson, Rearden Lamberton; and 30% in continuing trust for the benefit of Adelle's other grandson, Roark Lamberton-Davies.

13.     Both the Trust and the continuing trusts are spendthrift trusts, and any distributions are at the sole discretion of the Trustee.

14.     On May 27, 2011, Adelle also executed an updated Will.  Adelle's Will is a pour-over Will which directs all Estate assets into the Trust.  In her Will, Adelle appointed Rearden Lamberton as Executor of her Estate.

15.     Soon after the May 27, 2011 documents were executed, Mr. Lamberton, who had long been dissatisfied with his mother's wishes, began the first of many attempts to circumvent Adelle's planning and gain control of her assets.

16.     Mr. Lamberton's efforts first included attempts to influence Adelle's attorneys into changing her 2011 planning so that Mr. Lamberton would begin receiving immediate distributions and would ultimately receive Adelle's entire estate outright.

17.     That scheme failed.

18.     On or about August 11, 2015, Mr. Lamberton then entered Adelle's hospital room, where Adelle was under heavy sedation and observation following a reaction to one of her cancer medications.  Despite this, Mr. Lamberton attempted to have Adelle sign new estate planning documents that, if they had gone into effect, would have gutted her 2011 planning, and left Mr. Lamberton in control of Adelle and her assets.

19.     That scheme also failed.

20.     On or about November 16, 2015, Mr. Lamberton then sent an agent to an assisted living facility where Adelle was recovering in an attempt to have her sign over control of various bank and brokerage accounts.

21.     That scheme also failed.

22.    On December 23, 2015, Mr. Lamberton then spearheaded an involuntarily conservatorship proceeding in the local Connecticut probate court for the purpose of conserving Adelle and her assets.

23.    On February 18, 2016, the probate court conducted a hearing on the involuntary conservatorship request.  At the hearing, which Adelle personally attended, a number of outrageous and offensive claims were made in support of the involuntary conservatorship request.

24.    That scheme also failed, as on March 31, 2016, the probate court denied the involuntary conservatorship request.

25.    After the court denied the involuntary conservatorship request, Mr. Lamberton never visited his mother again.

26.    Adelle remained as Trustee of the Trust until November 2016, when Attorney Paul Greenan stepped into the role of Successor Trustee.

27.    Adelle died on December 23, 2016 at age 92.

28.    In January 2017, Rearden Lamberton ("Rearden," or "Executor"), acting in his appointed role, promptly submitted Adelle's 2011 Will to the local Connecticut probate court.

29.    Mr. Lamberton immediately filed unspecified objections challenging the validity of Adelle's Will.

30.     Soon after commencing the Will contest, Mr. Lamberton began to push for settlement discussions, which the Executor rejected.

31.     In August 2017, the Executor asked the probate court to authorize payment of his legal fees and costs as required to defend Adelle's Will against Mr. Lamberton's legal challenge.  Payment was requested from Estate assets.

32.     As payment of legal fees and costs accrued by an executor during a Will contest are authorized under a long-standing Connecticut statute, the probate court approved the Executor's request.

33.     On December 12, 2017, Mr. Lamberton sought to delay payment of the Executor's fees by appealing the probate court's fee award ("Appeal No. 1"), to the local Superior Court, which in Connecticut sits above the probate court for appellate purposes.

34.     On January 23, 2019, the Superior Court denied Mr. Lamberton's request in Appeal No. 1 and found that the Executor was entitled to his court awarded fees of $30,000.

35.     In rejecting Mr. Lamberton's claims, the Superior Court wrote:

The [Executor] vigorously and properly challenges the contention of [Mr. Lamberton] that promoting settlement should be a factor in the analysis of issues currently before the court . . .  [T]he court agrees with [the Executor] and the Probate Court that disallowing incremental awards for expenses in pursuing admission of a will would likely have a greater negative impact than any possible detriment arising from the

allowance of incremental awards.  The concept of favoring settlement of litigation should not be used as a club – a siege-like weapon of attrition – so as to disincentivize final adjudication of rights . . .

The efficient administration of the courts is subserved by the ending of disputes with the delay and expense of a trial, and the philosophy or ideal of justice is served in the amicable solution of controversies.  Our rules specifically provide for the procedure to be followed in pretrial sessions designed to encourage the settlement of cases. We view with disfavor, however, all pressure tactics, whether employed directly or indirectly, to coerce settlement by litigants, their counsel and their insurers . . . Delaying any award of expenses under the statute, as urged by [Mr. Lamberton], would have the coercive effect that the [Connecticut] Supreme Court said is to be avoided. . . . More narrowly, the public policy implicit in awarding expenses on a win-or-lose basis is to encourage the designated executor to pursue admission of the will, without the subtle (or not so subtle) pressure to settle that can be generated by ongoing litigation expenses.

(*See* Superior Court's Ruling dated Jan. 23, 2019, at 19-23, citing Allstate Ins. Co. v. Mottolese, 261 Conn. 521, 531 (2002), attached hereto as Exhibit "A.")

36.    Despite the Superior Court's warning against dilatory and coercive litigation tactics in Appeal No. 1, on February 11, 2019, Mr. Lamberton proceeded to further appeal the Superior Court's January 23, 2019 decision to the Connecticut Appellate Court ("Appeal No. 2").

37.    On May 9, 2019, the Executor filed a motion to lift an automatic appellate stay in Appeal No. 2 so that his long-withheld fees could be released from the Estate.  Per standard appellate procedure, that motion was considered by the same Superior Court Judge who issued the January 23, 2019 decision on appeal.

38.    In deciding that motion to lift the stay in the Executor's favor, the Superior Court again noted the dilatory "war of attrition" quality of Mr. Lamberton's litigation strategy.  To that end, the Superior Court stated:

> While money may typically be deemed an inappropriate subject for irreparable harm, a lack of money to pay for services of an attorney can only have adverse consequences of a non-monetary nature. Counsel may be reluctant to prioritize a case in which funds are slow in being paid, potentially prolonging the period of time necessary to reach an ultimate resolution. To the extent that the court has used a metaphor of a "war of attrition," slowing or cutting off payments is a potent weapon in a litigation context, reinforced by [Mr. Lamberton's] earlier reference to the goal of pressuring the [Executor] to seek a settlement of the dispute between the parties . . . Extensive litigation relating to a relatively modest allowance for attorney's fees can only slow down the process, at a minimum a distraction from the ultimate issues that need to be resolved by the Probate Court. To the extent that [Mr. Lamberton's] articulated goals include pressuring the [Executor] towards possible settlement, any "coerced" compromise would tend to frustrate the intended dispositions of the testatrix.
> ….
> Further, the [Executor] argued and in its memorandum of decision the court had recognized that there is a certain "war of attrition" quality to the plaintiffs' appeal.  The very nature of a "war of attrition" is that delay will work in favor of one of the parties, the party who can outlast the other.  The rationale for a war of attrition is that while a party may not be able to prevail on the battlefield in more direct combat, the longer the war takes, the greater the likelihood that it will be able to prevail nonetheless, simply as a matter of endurance. That necessarily implicates a desire for delay as opposed to expeditious resolution of the issues between the parties.
>
> There are at least a few indicia of delay as a tactic.  For one, the plaintiffs continue to rely upon the text of the Probate Rules as explicit authority for their position, notwithstanding the express recognition in the rules that they are inapplicable to proceedings in the Superior Court in connection with a probate appeal. While those rules may be suggestive of the proper interpretation of the relevant statute, the seeming continued failure/refusal of

the plaintiffs to recognize the inability to rely on those rules as primary authorities for their position can only reinforce the perception of a continued "war of attrition" approach.  More directly, in their trial brief, they implicitly justified a "war of attrition" interpretation by claiming that denying the defendant legal fees would tend to encourage him to discuss settlement, and the settlement they appear to have had in mind does not appear to be settlement of the issue of legal fees but rather a global settlement including the substantive issues before the Probate Court.  This clearly is an indication that delay- a proxy for financial pressure - is being used as a tool (or perhaps more accurately, a weapon).

(*See* Superior Court decision, dated July 9, 2019, at 13-15, attached hereto as Exhibit "B.")

39.    On December 11, 2019, after the Superior Court had decided Appeal No. 1 in the Executor's favor, and with Appeal No. 2 still pending, Mr. Lamberton proceeded to commence a **third** appeal ("Appeal No. 3").

40.    In Appeal No. 3, Mr. Lamberton again challenged an order of the probate court awarding additional fees to the Executor.  By filing Appeal No. 3, Mr. Lamberton again sought to delay the Executor's financial ability to defend the Will, thereby forcing Rearden into coercive settlement negotiations that would finally allow Mr. Lamberton to revise Adelle's estate planning to his sole benefit.

41.    As anticipated, on May 5, 2020, the Appellate Court decided Appeal No. 2 in the Executor's favor by affirming the Superior Court's January 23, 2019 decision in Appeal No.1.

42.     The Trust has continued to be administered as a single, undivided entity pending the settlement of Adelle's Estate.

43.     On October 20, 2020, the Trustee commenced a new, separate proceeding by voluntarily submitting a Trustee Accounting with the probate court. That Accounting spanned the entire period Trustee Greenan had been managing the Trust, from November 2016 to September 2020.

44.     The Accounting was submitted because the Trustee anticipated this would be a streamlined and cost-effective opportunity to have his actions vetted and approved by the court, particularly as the Trustee was then considering whether it may be appropriate to consider regular, and unrecoverable, Trust disbursements to Mr. Lamberton and the other beneficiaries.

45.     The probate court scheduled a hearing for March 16, 2021 to approve the Trustee's Accounting.

46.     On March 15, 2021, and on the eve of the hearing, Mr. Lamberton filed a voluminous number of nonsensical objections to the Trustee's Accounting. Notably, this included an objection challenging the validity of the Trust, despite the fact that the Trust had already been operating for several years, and Mr. Lamberton had previously requested and received distributions from the Trust.

47.     The probate court was unable to approve the Trustee's Accounting at the March 16, 2021 hearing due to these objections.

48.     During discovery in the Accounting matter, Mr. Lamberton requested, and was promptly provided, with voluminous amounts of documentation relating to the Trust, including but not limited to every monthly financial statement, every tax return, and all expenses incurred by the Trust during the Accounting period.

49.     Despite being provided with thousands of pages of documents, Mr. Lamberton's objections to the Trustee's Accounting remain pending, as he still claims to require significant discovery.   As with Adelle's Estate, the Trustee Accounting now remains in protracted litigation.

50.     In addition, Mr. Lamberton continues to maintain his March 2021 challenge to the validity of the Trust.

51.     Despite Mr. Lamberton's challenge, Conn. Gen. Stat. § 45a-499qq provides a limited time to challenge the validity of a revocable trust, as a beneficiary must commence such a challenge either within one (1) year after the settlor's death, or, alternatively, if the beneficiary has been provided with notice of the existence of the Trust, within as little as one hundred and twenty (120) days of such notice, whichever is shorter.

52.     As Adelle died in December 2016 and Mr. Lamberton did not challenge the validity of her Trust until March 2021, his claims are time barred.

53.     During the same time period Mr. Lamberton has claimed that the Trust is invalid, he has nevertheless relied on language contained in that same purportedly invalid Trust to ask that the probate court provide him with immediate Trust distributions of thirty-five thousand dollars ($35,000), followed by regular monthly distributions of five thousand dollars ($5,000).

54.     Mr. Lamberton's pursuit of a time barred challenge to the validity of the Trust, while also attempting to demand distributions from the Trust, is inconsistent, vexatious, frivolous, and calculated to harass and annoy.

55.     Throughout the same time period Mr. Lamberton began challenging the Trust, costly litigation remained ongoing in the Will contest, and in Appeal No. 3.

56.      Appeal No. 3 was scheduled for trial on August 3, 2021.  On July 26, 2021, Mr. Lamberton filed a request for a settlement conference.  The Executor objected to that request, and instead demanded to proceed to trial.

57.     On July 29, 2021, and just five days before trial, Mr. Lamberton unilaterally withdrew all claims in Appeal No. 3.  No legal or factual basis was indicated to support or justify his withdrawal.

58.    To date, the Will contest which Mr. Lamberton has now pursued for almost seven (7) years remains ongoing.  During those seven years, Mr. Lamberton:

(i)     has taken over thirteen depositions;

(ii)    has requested and been provided with thousands of pages of documents provided by the multiple attorneys and law firms who represented Adelle, the Executor, the Trustee, and all of Adelle's financial institutions;

(iii)   has requested and been provided with all of Adelle's personal medical records from multiple health care facilities and doctors, and has also deposed those same doctors; and

(iv)    has filed a voluminous number of motions, objections, and other requests in the underlying Estate matter.

59.    These voluminous motions and objections are well demonstrated by the online docket in Estate of Adelle Lincoln Alessandroni (Probate Docket No. 17-00018), which currently spans twenty-seven (27) pages, and contains two hundred and sixty-three (263) individual docket entries.

60.    To date, Mr. Lamberton has commenced three (3) separate appeals. Two of those appeals failed, and the third was withdrawn on the eve of trial.  In each appeal, Mr. Lamberton attempted to delay payment of the Executor's legal fees.  In

each appeal, Mr. Lamberton has attempted to prevent or delay payment of the Executor's legal fees, thereby coercing him into settlement.

61.    During these seven (7) years of litigation, Mr. Lamberton has repeatedly indicated a desire to force the Executor and the Trustee into settlement negotiations.

62.    Adelle's Will still has not been admitted to probate, and there are no trial dates scheduled in that matter.  Even if the Will contest is able to proceed to trial before the probate court, that decision remains subject to further appeals and other litigation tactics that have already been misused by Mr. Lamberton.

63.    In addition to the Will contest and multiple appeals, Mr. Lamberton's March 2021 challenge to the validity of the Trust also remains in protracted litigation.  Based on Mr. Lamberton's conduct over the last seven (7) years, more litigation and further appeals are expected as the Will is probated, and the Trust is administered.

64.    Mr. Lamberton has appeared in-person in the State of Connecticut only one (1) time during the last seven (7) years in connection with these various litigations.  Instead, Mr. Lamberton has indicated that travel to Connecticut is not convenient or practical for him.

65.    Since April 2021, Mr. Lamberton has also claimed in multiple court filings that he is in deteriorated health, suffers from decreased endurance, and is unable to work or exert himself.

66.    To date, the Executor has incurred legal fees, costs, and other expenses in excess of one hundred and eighty thousand dollars ($180,000) in connection with the Will contest, Appeal No. 1, Appeal No. 2, and Appeal No. 3.  Those fees are paid out of the Estate.

67.    The Estate has been further depleted by administration costs, penalties, and various other expenses which are already estimated to be well in excess of one hundred thousand dollars ($100,000).

68.    In total, Mr. Lamberton's actions have depleted the value of Adelle's Estate in excess of two hundred and eighty thousand dollars ($280,000).

69.    These damages to the Estate have in turn directly damaged the Trust, which is the sole remainderman of the Estate by virtue of Adelle's pour-over Will.

70.    Mr. Lamberton has further damaged the Trust by delaying the receipt of proceeds from the Estate, which were previously valued in excess of $1,000,000 prior to Mr. Lamberton's dilatory and abusive litigation tactics.

71.     The Trustee has been able to double the value of Trust assets during the same time period as Mr. Lamberton has engaged in these abusive litigation tactics. Had the assets from the Estate been timely turned over to the Trust, the Trustee would have likewise been able to double that $1,000,000 into $2,000,000.

72.     Mr. Lamberton has attempted to circumvent his mother's planning for well over ten (10) years, with almost seven (7) years now spent on dilatory, abusive, and vexatious litigation.

73.     Mr. Lamberton has acted in bad faith, has been stubbornly litigious, and has caused the Trust unnecessary trouble and expense by delaying the receipt of over $1,000,000 in Trust assets; by depleting those Trust assets in excess of $280,000; by causing the Trust to be deprived of investment income and opportunities which would have increased the value of the Trust in excess of $1,000,000; by requiring the Trust to defend and litigate in various matters; and by requiring the Trust to file this Complaint.

74.     Mr. Lamberton has taken every opportunity to delay and prevent any of the litigation he has commenced from ever being resolved, which is being done for the improper purpose of strongarming the Executor and the Trustee into coercive settlement negotiations by which Mr. Lamberton seeks to overturn his mother's final

wishes.  Trust assets remain held hostage by his litigation tactics, and the Trust has and will continue to suffer further damages unless relief is granted.

75.     On April 28, 2023, the Trust, through counsel, served a demand letter to Mr. Lamberton via a private process server pursuant to O.C.G.A. §§ 9-15-14 and 51-7-80 *et seq.* requesting that he dismiss all of the above ongoing litigation (the "Abusive Litigation Letter").  A copy of the Abusive Litigation Letter and the return of service is attached hereto as Exhibit "C" and incorporated herein by reference.

76.     In the Abusive Litigation Letter, the Trust's counsel formally requested that Mr. Lamberton dismiss the above claims, stating that his continued pursuit of these frivolous claims constituted a violation of O.C.G.A. §§ 9-15-14 and 51-7-81.

77.     In the Abusive Litigation Letter, the Trust afforded Mr. Lamberton an opportunity to voluntarily dismiss these claims.  The letter also notified Mr. Lamberton that if he did not dismiss his claims by Tuesday, May 30, 2023, the Trust would file a claim for abusive litigation against him.

78.     On May 1, 2023, the Trust, posted a second letter to Mr. Lamberton's residence via private process server, correcting a typographical error in the April 27, 2023 letter.  A copy of the abusive litigation letter and the post notification is attached hereto as Exhibit "D" and incorporated herein by reference.

## **FIRST CLAIM FOR RELIEF**
### **(Injunctive Relief)**

79.     The Trust realleges and incorporates herein by reference paragraphs 1 through 78 of the Complaint as if fully restated herein.

80.     Mr. Lamberton has filed multiple baseless litigations, including three failed appeals.

81.     These baseless legal challenges have caused years of delay and have caused financial damages to the Trust in excess of $1,280,000.

82.     The Connecticut Superior Court long ago characterized Mr. Lamberton's litigation strategy as an inappropriate "war of attrition."

83.     The Trust has incurred irreparable harm by Mr. Lamberton's actions.

84.     The Trust will continue to incur irreparable harm if Mr. Lamberton continues this vexatious and malicious litigation.

85.     An injunction is necessary to prevent Mr. Lamberton from continuing this and other similar vexatious, harassing, and bad faith conduct in the future.

86.     The public interest is also served by an injunction, as Mr. Lamberton's conduct has wasted and will continue to waste substantial judicial resources should it continue.

87.     Plaintiff is likely to succeed on the merits of its claims against Mr. Lamberton.

88.    Therefore, the Trust is entitled to injunctive relief enjoining Mr. Lamberton from continuing his course of engaging in vexatious, harassing, and bad faith conduct, and in abusing the litigation processes.

## SECOND CLAIM FOR RELIEF
### (Abusive Litigation in Violation of Ga. Code Ann. § 51-7-81)

89.    The Trust realleges and incorporates herein by reference paragraphs 1 through 88 of the Complaint as if fully restated herein.

90.    By (i) commencing and pursuing a Will contest for almost seven (7) years; (ii) by filing and pursuing three redundant, failed appeals in the context of that Will contest; and (iii) by filing a multitude of frivolous and/or time barred claims against the Trust, Mr. Lamberton has been stubbornly litigious, has acted with malice and without substantial justification, and has caused the Trust unnecessary trouble and expense by: long delaying the receipt of Trust assets; by depleting Trust assets; by causing the Trust to be deprived of over $1,000,000 in investment opportunities and investment earnings for almost seven (7) years; by having to defend the Trust in various matters; and by requiring the Trust to file this Complaint.

91.    By commencing and pursuing seven (7) years of Estate litigation, three failed appeals, and three (3) years of Trust litigation, Mr. Lamberton has asserted claims that lacked any justiciable issue of law or fact.

92.     By commencing and pursuing seven (7) years of Estate litigation, three failed appeals, and three (3) years of Trust litigation, Mr. Lamberton has asserted claims that were interposed for delay or harassment.

93.     In the course of Mr. Lamberton's seven (7) years of Estate litigation, three failed appeals, and three (3) years of Trust litigation, Mr. Lamberton has unnecessarily expanded the proceedings by his improper conduct. Pursuant to O.C.G.A. § 51-7-83, the Trust is entitled to recover damages for: the Trust's diminution in value based on seven years of waste, costs, penalties, and administration fees caused in the Estate litigation; the Trust's diminution in value based on legal fees of the Estate; the Trust's diminution in value based on lost investment opportunities; all attorneys' fees and expenses required to defend the Trust against Mr. Lamberton's baseless objections; and all attorneys' fees and expenses required by this litigation.

### THIRD CLAIM FOR RELIEF
### (Vexatious Litigation in Violation of Conn. Gen. Stat. § 52-568)

94.     The Trust realleges and incorporates herein by reference paragraphs 1 through 93 of the Complaint as if set forth herein.

95.     Appeal No. 1 was without probable cause and was filed by Mr. Lamberton with a malicious intent unjustly to vex and trouble the Trust.

96.     Appeal No. 2 was without probable cause and was filed by Mr. Lamberton with a malicious intent unjustly to vex and trouble the Trust.

97.     Appeal No. 3, which Mr. Lamberton withdrew just five days before trial, was without probable cause and was filed by Mr. Lamberton with a malicious intent unjustly to vex and trouble the Trust.

98.     For groundless or vexatious civil suits or defenses, Conn. Gen. Stat. § 52-568 provides for mandatory double damages if the suit was without probable cause, and additional treble damages if the suit was motivated by "a malicious intent unjustly to vex and trouble another person."

99.     Conn. Gen. Stat. § 52-568 further provides damages against "any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages."

100.    As a result of his vexatious civil suits and groundless appeals, Mr. Lamberton is liable to the Trust for treble damages.

## FOURTH CLAIM FOR RELIEF
### (Vexatious Litigation in Violation of Connecticut Common Law)

101.   The Trust realleges and incorporates herein by reference paragraphs 1 through 100 of the Complaint as if set forth herein.

102.   Appeal No. 1 was without probable cause and was filed by Mr. Lamberton with a malicious intent to vex and trouble the Trust.

103.   Appeal No. 2 was without probable cause and was filed by Mr. Lamberton with a malicious intent to vex and trouble the Trust.

104.   Appeal No. 3 was without probable cause and was filed by Mr. Lamberton with a malicious intent to vex and trouble the Trust.

105.   The Superior Court has acknowledged the malice of Mr. Lamberton's actions and his abusive "war of attrition" strategy.

106.   The Trust is entitled to treble damages as a result of Mr. Lamberton's groundless appeals.

## FIFTH CLAIM FOR RELIEF
### (Abuse of Process in Violation of Connecticut Common Law)

107.   The Trust realleges and incorporates herein by reference paragraphs 1 through 106 of the Complaint as if fully restated herein.

108.   By (i) commencing and pursuing a Will contest for almost seven (7) years; (ii) by filing and pursuing three redundant, failed appeals in the context of that

Will contest; and (iii) by filing a number of frivolous and/or time barred claims against the Trust, Mr. Lamberton has acted in bad faith, has been stubbornly litigious, and has caused the Trust unnecessary trouble and expense by long delaying the receipt of Trust assets; by depleting Trust assets; by causing the Trust to be deprived of over $1,000,000 in investment opportunities and investment income for almost seven (7) years; by having to defend the Trust in various matters; and by requiring the Trust to file this Complaint.

109.   In the course of Mr. Lamberton's seven (7) years of Estate litigation, three failed appeals, and three (3) years of Trust litigation, Mr. Lamberton has unnecessarily expanded the proceedings by his improper conduct.

110.   The Trust is entitled to recover all damages caused by Mr. Lamberton's abuse of the legal process, including: the Trust's diminution in value based on seven years of waste, costs, penalties, and administration fees caused in the Estate litigation; the Trust's diminution in value based on legal fees of the Estate; the Trust's diminution in value based on lost investment opportunities; all attorneys' fees and expenses required to defend the Trust against Mr. Lamberton's baseless objections; and all attorneys' fees and expenses required by this litigation.

## SIXTH CLAIM FOR RELIEF
### (Attorneys' Fees and Costs Under O.C.G.A. § 13-6-11)

111.   The Trust realleges and incorporates herein by reference paragraphs 1 through 110 of the Complaint as if set forth herein.

112.   Mr. Lamberton has been stubbornly litigious, has acted in bad faith, and has caused the Trust unnecessary trouble and expense, entitling the Trust to recover its attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff The Adelle Lincoln Alessandroni Revocable Trust respectfully requests:

1.    That the Court grant Plaintiff injunctive relief enjoining Mr. Lamberton from continuing his course of engaging in vexatious, harassing, and bad faith conduct, and in abusing the litigation processes;

2.    That the Court enter a judgment in favor of the Trust and against Mr. Lamberton on each of its claims;

3.    That the Trust be awarded damages in the amount of at least $1,280,000 plus interest;

4.    That all damages be doubled or tripled in accordance with applicable law;

5.      That the Trust be awarded its expenses of litigation in filing this Complaint, including attorneys' fees; and

6.      That the Court grant the Trust such other and further relief as this Court deems just and proper.

Respectfully submitted, this 1st day of June, 2023.

BENDIN SUMRALL & LADNER, LLC

/s/ Robert W. Stannard
ROBERT W. STANNARD
Georgia Bar Number 675212
JENNIFER BELLIS
Georgia Bar Number 567020

*Counsel for Plaintiff*

One Midtown Plaza
1360 Peachtree Street NE, Suite 800
Atlanta, Georgia 30309
T: 404.671.3100
F: 404.671.3080
rstannard@bsllaw.net
jbellis@bsllaw.net

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| The Adelle Lincoln Alessandroni Revocable Trust,<br><br>  Plaintiff,<br><br>vs.<br><br>Lance Lamberton<br><br>  Defendant. | Case No. _____<br><br><br>**JURY TRIAL DEMANDED** |

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing **COMPLAINT** was prepared in Times New Roman, fourteen (14) point font with a top margin of 1.5 inches.

This 1st day of June, 2023.

BENDIN SUMRALL & LADNER, LLC

  /s/ Robert W. Stannard_____

One Midtown Plaza  ROBERT W. STANNARD
1360 Peachtree Street NE, Suite 800  Georgia Bar Number 675212
Atlanta, Georgia 30309  JENNIFER BELLIS
T: 404.671.3100  Georgia Bar Number 567020
F: 404.671.3080
rstannard@bsllaw.net  *Counsel for Plaintiff*
jbellis@bsllaw.net

- 26 -